# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| **INGA OLSEN**, | ) | |
| | ) | Case No.: 14-20859-PGC |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **INGA OLSEN**, | ) | Adv. Proc. No.: 15-02031 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **FINANCE AUTHORITY OF MAINE**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following the judgment of the United States Bankruptcy Appellate Panel for the First Circuit (the "BAP"), dated July 19, 2017, reversing this Court's October 26, 2016 ruling that the Finance Authority of Maine's ("FAME") retention of funds garnished post-petition did not constitute a willful violation of the stay for which relief was warranted under § 362(k)(1) of the Bankruptcy Code.[1] The BAP held that although FAME's one time, post-petition garnishment of $117.90 of Inga Olsen's (the "Debtor") benefits was not a willful violation of the automatic stay, its retention of those benefits after receiving notice of her bankruptcy filing was willful. The BAP remanded the matter to this Court for findings and

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

rulings as to injury and, if appropriate, quantification of damages.[2] After consideration of the BAP's mandate and the parties' positions in this matter, the Court hereby makes the following findings of fact and conclusions of law:

### I. Findings of Fact

1. The Debtor filed a voluntary Chapter 7 bankruptcy petition in this Court on Wednesday October 29, 2014. Docket Entry ("D.E.") 1 of Case No.: 14-20859.

2. The Debtor listed FAME as a creditor on Schedule F of her bankruptcy schedules. D.E. 1 of Case No.: 14-20859.

3. The Debtor's obligations to FAME were for educational purposes. D.E. 45 at pgs. 30-31.

4. The Bankruptcy Noticing Center sent notice of the Debtor's bankruptcy filing to her creditors, including FAME, on Saturday, November 1, 2014. D.E. 4 of Case No.: 14-20859; D.E. 45 at pgs. 21-22.

5. On the following Monday, November 3, 2014, FAME garnished $117.90 from the Debtor's social security disability income. D.E. 45 at pgs. 19, 21, 23.

6. The Debtor could not recall any other occasions when FAME garnished her social security disability income during the pendency of her underlying bankruptcy case and presented no evidence of any other such garnishments. D.E. 45 at pgs. 24-26, 42.

7. On October 1, 2015, the Debtor commenced this adversary proceeding by filing a two-count complaint against FAME and Windham Professionals, Inc. seeking a discharge of the Debtor's student loan debt pursuant to the undue hardship provisions of 11 U.S.C. §

---

[2] The BAP affirmed that portion of the October 26, 2016 judgment in which this Court determined that certain student loan obligations owed by the Debtor to FAME are not dischargeable in bankruptcy.

2

523(a)(8) in Count I and seeking relief against Windham Professionals, Inc. for an alleged violation of the automatic stay in Count II.[3]  D.E. 1.

8. The complaint alleged, "Upon information and belief, throughout the pendency of her Chapter 7 bankruptcy proceeding, [FAME] garnished Debtor's social security income, without seeking prior bankruptcy court approval." D.E. 1 at ¶ 8.

9. In its answer, filed October 30, 2016, FAME responded to this allegation by stating that it was without information or knowledge sufficient to form a belief as to the truth of the matter asserted. D.E. 3 at ¶ 8-9.

10. On January 5, 2016, FAME issued a check to the Debtor in the amount of $132.90, representing the November 3, 2014 garnishment in the amount of $117.90 plus an "IRS fee" in the amount of $15.00. D.E. 45 at pg. 26; FAME's Trial Exhibit H.

11. The Debtor was deprived of $132.90 for approximately fourteen months. D.E. 45 at pgs. 19, 21, 23, 26; FAME's Trial Exhibit H.

12. The Debtor did not argue that any particular interest rate should be applied to her loss of use of the garnished funds, but FAME asserts that the prime rate is the applicable interest rate. D.E. 63 at ¶ 14.

13. Citing historical data from the *Wall Street Journal*, FAME further states that prime between December 16, 2008 and December 17, 2015 was 3.25% and prime between December 17, 2015 and December 15, 2016 was 3.5%. D.E. 63 at ¶ 14.

14. Ten months after the trial—and after the BAP entered its judgment—Debtor's counsel filed an Affidavit of Attorney Fees, which stated, in pertinent part:

---

[3] The Debtor filed an amended complaint on March 2, 2016 which contained the same two counts as the first complaint but named FAME as the sole defendant (DE 14, 16).

3

> 5. I incurred 6.2 hours in fees solely pertaining to the bankruptcy proceeding, all at $185.00 per hour ($1,147.00). Of the remaining $12,035.00, only 4.2 hours ($840.00) can be clearly determined to pertain to only the automatic stay violations. All other fees, including drafting briefs, proposed orders, legal research, client meetings, and attendance at hearings, pertained to both the student loan and automatic stay violation matters.

D.E. 50 at ¶ 5.

15. The affidavit attached itemized fee detail for all of the services provided by counsel to the Debtor, beginning with the drafting of the Debtor's petition on October 23, 2014 and ending with an August 1, 2017 meeting with the Debtor to discuss the status of the Debtor's case following the BAP's July 19, 2017 judgment. D.E. 50 at pgs. 4-9.

## II. Analysis

In accordance with the BAP's mandate, this Court now reviews the record for a determination as to whether the Debtor is entitled to any actual or punitive damages as a result of FAME's retention of the garnished funds in willful violation of the automatic stay.

Victims of willful stay violations are entitled to recover actual damages. 11 U.S.C. § 362(k)(1)("[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees . . ."). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, n.9 (B.A.P. 1st Cir. 2004) (*quoting* Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995), *dismissed*, 201 F.3d 444 (9th Cir. 1999)). *See also*, Foster v. Burns (In re Foster), 574 B.R. 19, 28–29 (Bankr. D. Me. 2017). However, notwithstanding this mandate, a debtor still carries the burden of establishing the extent of the actual damages. *See, e.g.,* Heghmann, 316 B.R. at 405 (B.A.P. 1st Cir. 2004) (". . . actual

4

damages should be awarded only if there is concrete evidence supporting the award of a definite amount.").

Attorney fees and costs are an element of a claim under § 362 and, therefore, a debtor must establish the amount of those fees and costs at trial. Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012) ("[a] debtor seeking damages under [section 362(k)(1)] bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation.") (*citing*, In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009)). *See also*, In re Perrin, 361 B.R. 853, 857 (B.A.P. 6th Cir. 2007) ("[w]here there was no proof in the record concerning actual damages suffered by the Debtors, the bankruptcy court properly declined to award damages, which could only have resulted from speculation."); Wagner v. Ivory (In re Wagner), 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987) (one hundred dollars in compensatory damages awarded where ". . . debtor produced very little evidence that he suffered any actual harm as a result of . . . violations of the automatic stay"); Promower, Inc. v. Scuderi (In re Promower, Inc.), 56 B.R. 619, 623 (Bankr. D. Md. 1986) (no compensatory damages award due to lack of proof).

In Debtor's Amended Proposed Findings of Fact and Conclusions of Law, the Debtor argues that she "testified as to the extent of her damages at trial, including emotional distress she suffered." A review of the evidentiary record tells a different story, however. For instance, while the Debtor testified at trial that she suffers from a sense of hopelessness, she attributes that emotional state to her continuing obligation to repay the student loan indebtedness as opposed to FAME's retention of the garnished funds. In fact, much of the evidence presented at trial was

5

              Document      Page 6 of 10

offered in support of the Debtor's claim under § 523(a)(8) while the Debtor offered very little evidence to support her claim for actual damages under § 362(k).

In its proposed findings of fact and conclusions of law, FAME concedes that the Debtor did lose the benefit of enjoyment of the garnished funds for a period of fourteen months. The Debtor, however, neither asked for actual damages in the form of interest nor asserted a rate at which any such interest should be calculated. The only evidence of actual harm offered by the Debtor on this issue is that FAME withheld $117.90 of her funds for fourteen months. Left with very little foundation upon which to fashion a remedy, this Court takes judicial notice of the prime rate. Fed. R. Evid. 201. *See also,* <u>White Marlin Open, Inc. v. Heasley</u>, 2017 WL 3434290, at *2 (D. Md. Aug. 10, 2017). At that rate, the Debtor lost less than $6.00 in interest during the time in which the garnished funds were held.

The Debtor likewise offered no evidence at trial to support a claim for attorney's fees and costs in connection with her § 362(k) claim. In fact, at trial, counsel for the Debtor indicated that attorney fees were of secondary concern:

> Now, the issue of damages, I don't know. You know, I put a lot of time and effort into this case. The stay allows for attorney fees. Our primary goal here was to get the student loans discharged. I am not going to say that I should get paid my fees because we have this relatively minor violation of the stay. That was not the reason for moving forward with this case.
>
> If the Court chooses to award some of my fees, I'll take them, but that's not the that reason we're here today. We're here to get the student loan discharged. I think that there is a willful violation of the stay. I think that what, if any, damages are awarded for that willful violation of the stay is entirely subjective. It's entirely up to the Court. And so, really, that's where I think Mr. Felkel may win if he wins."

(D.E. 45 at pg. 52). Only after the BAP affirmed this Court's determination that the Debtor's student loan indebtedness is non-dischargeable did counsel for the Debtor submit the Affidavit

for Attorney Fees. Not once prior to filing the affidavit had the Debtor ever pled fees and costs with any specificity, let alone provided evidence in support of any such claim.

The Debtor relies on In re Lopez, 405 B.R. 24 (B.A.P. 1st Cir. 2009) for the proposition that post-trial submission of a fee application is a procedurally appropriate manner in which to seek an award of attorney fees. But Lopez does not explain why the United States Bankruptcy Court for the District of Puerto Rico ordered the moving party to submit a fee application post-trial. This is not the procedure that this Court employs to assess fees and costs as actual damages in a stay violation and was not the procedure that governed the case at hand; none of the pre-trial procedural orders indicated that evidence on any issue of fact would be admitted post-trial. In fact, comments made by counsel for the Debtor during the trial indicated his understanding—not only that the trial presented the parties' only opportunity to submit evidence as to both liability and damages—but that the Debtor had made the strategic decision not to introduce any such evidence, choosing to focus, instead, on the student loan discharge claim under § 523(a)(8). Having failed to timely offer such evidence at trial, the Debtor will not now be permitted to rely upon an affidavit the Debtor filed almost ten months later asserting fees FAME has no opportunity to challenge.

Notwithstanding her failure to provide any evidence of attorney fees at trial, the Debtor is nonetheless entitled to an award in some amount. FAME did, in fact, willfully violate the automatic stay and the record establishes that FAME did not return the garnished funds until the Debtor took action to recover them. Since the Debtor was forced to incur some measure of cost as a result of FAME's willful violation—and keeping in mind the language under § 362(k) mandating an award of damages upon a finding of willful violation—the Court faces the difficult task of determining an award without the benefit of a clear evidentiary record.

7

In awarding fees, the Court must be guided by principles of reasonableness. In re Silk, 549 B.R. 297, 302 (Bankr. D. Mass. 2016). *See also*, America's Servicing Co. v. Schwartz–Tallard (In re Schwartz–Tallard), 803 F.3d 1095, 1101 (9th Cir. 2015) ("[o]nly an award of fees reasonably incurred is mandated by the statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees. Sound exercise of this discretion ... provide[s] a sufficient check on any abuses that might otherwise arise") (internal citation omitted).

Further, courts have held that "[a]s to costs and attorney fees, debtors faced with violations of the stay have a duty to mitigate their damages." Yantis v. GLHS Unity Surgical Ctr. (In re Yantis), 553 B.R. 351, 355 (Bankr. N.D. Ind. 2016). *See also,* Burns v. Home Zone Sales & Lease Purchase, LLC (In re Burns), 503 B.R. 666, 674 (Bankr. S.D. Miss. 2013) (". . . courts have developed a special rule requiring that a moving party mitigate damages in actions brought under § 362(k)."); In re Oksentowicz, 324 B.R. 628, 630 (Bankr. E.D. Mich. 2005) (". . . courts have overwhelming [sic] held that debtors have an obligation to attempt to mitigate damages prior to seeking court intervention"); In re Rosa, 313 B.R. 1, 9 (Bankr. D. Mass. 2004) ("[d]ebtors are indeed under a duty to mitigate their damages resulting from automatic stay violations.").

As FAME notes, the Debtor made no attempt to mitigate any damages she suffered as a result of FAME's retention of her funds after receiving notice of the Debtor's case filing. The record before the Court indicates that the Debtor commenced the stay violation claim eleven months after the funds were garnished and without any prior overture to FAME to see if it would simply return the wrongfully withheld funds. The record further establishes that FAME relinquished the funds without argument and approximately three months after the Debtor

8

commenced this adversary proceeding, indicating that a simple demand letter may well have achieved the same end result.

While courts must diligently defend the protections of the automatic stay, they must also ensure that the actions taken by a debtor's counsel are "appropriate in light of less costly or time-consuming alternatives." In re Silk, 549 B.R. at 303. In light of the Debtor's failure to avail herself of less costly alternatives to litigation in the intervening months between the garnishment and the commencement of this adversary proceeding, this Court finds that an award of $400 (two hours of attorney time at $200 per hour) is appropriate under these circumstances. *See*, In re Docherty, 2016 WL 675835 at *11 (Bankr. N.D. Ohio Feb. 18, 2016) ("The Court declines to award $7,413.92 in attorney's fees and instead awards $500.00, representing two hours of legal work at a rate of $250.00/hour. The Court believes that this amount of time would have been sufficient for debtor's attorney to contact the creditors and have the vehicle returned to the debtor promptly.")

The Debtor seeks actual damages in the form of costs and fees associated with the appeal. The Court declines to award such costs and fees, however. First, the Debtor's failure to mitigate weighs against such an award because if the Debtor recovered the garnished funds through a simple demand letter, litigation and the subsequent appeal would have been unnecessary—at least as to the § 362(k) claim. Second, in light of comments by Debtor's counsel at trial, the Court strongly suspects that the primary goal of the appeal—as with the underlying adversary proceeding—was to obtain a determination that the Debtor's loan obligations to FAME are dischargeable.

Finally, in certain instances, successful stay violation cases entitle a debtor to the recovery of punitive damages. 11 U.S.C. § 362(k). As this Court recently noted:

9

> Individuals injured by a willful violation of the automatic stay may be able to recover punitive damages, in appropriate circumstances. 11 U.S.C. § 362(k). The Code does not define the term "appropriate circumstances" but courts usually require something more than mere willfulness. Heghmann, 316 B.R. at 405. Punitive damages are intended to cause change in a creditor who is found to have acted in "arrogant defiance" of the Code. In re Panek, 402 B.R. at 77 (quoting In re Curtis, 322 B.R. 470, 486 (Bankr. D. Mass. 2005). "Relevant factors are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." Id. (citing In re Sumpter, 171 B.R. at 845). See also, Varela v. Ocasio (In re Ocasio), 272 B.R. 815, 825 (1st Cir. BAP 2002) (quoting, In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (listing as additional potential facts, " 'the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor' ").

Foster, 574 B.R. at 31.

FAME presumably has an ability to pay damages and no evidence of provocation by the Debtor was presented, but none of the remaining relevant factors considered by courts in awarding punitive damages are present in this case. Given, among other things, the failure of the Debtor to mitigate her damages and the "relatively minor violation of the stay", the Court concludes that punitive damages are not appropriate here.

### III. Conclusion.

Based on the foregoing factual findings and legal conclusion, the Court concludes that the Debtor suffered actual damages including accrued interest and attorney fees totaling, in the aggregate, $406.00.

Dated: December 29, 2017              /s/ Peter G. Cary
                                       Judge Peter G. Cary
                                       United States Bankruptcy Court